# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

**LAVAR HENDERSON,**

    **Petitioner,**

v.                                                                    **Civil Action No. 3:18cv105**

**TRACY RAY,**
*Warden, Sussex II State Prison,*

    **Respondent.**

## MEMORANDUM OPINION

Petitioner Lavar Henderson, a Virginia inmate, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "§ 2254 Petition").[1] (ECF No. 1.) Tracy Ray, Warden of the Sussex II State Prison, filed a Motion to Dismiss (the "Motion to Dismiss"), (ECF No. 5) and Rule 5 Answer, (ECF No. 6), and Henderson responded, (ECF No. 8.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion to Dismiss.

---

[1] Section 2254(a) states in relevant part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that [she or] he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

# I. Factual and Procedural Background

## A. Factual Background

The Virginia Court of Appeals summarized the facts underlying the judgment that Henderson now challenges:

> [O]n July 19, 2013, Detective Lindsey Wallace and Sergeant Michael Alston executed a search warrant at a house rented by appellant. Wallace found appellant in a bedroom located to the right as they entered the house. Other adults were in the house, including Mickel Fletcher, who was in a bedroom next to the kitchen.
>
> Wallace asked appellant "if there was anything illegal in the house that [she] needed to know about," and appellant replied, "No." Outside of appellant's presence, Sergeant Alston told Wallace that he found heroin in the kitchen. Appellant responded, "What you found is all that's here." When Wallace pressed appellant further, he told her that "there was heroin in the kitchen," that it belonged to Fletcher, and that he saw Fletcher put it in the kitchen.
>
> Further, appellant told Wallace that he drove to Philadelphia the day before, July 18, 2013, to pick up Fletcher and bring him to Richmond. Appellant said that, as they drove to Virginia, Fletcher asked appellant if he knew anything about "train," meaning heroin. Appellant told Fletcher he knew people in Richmond that Fletcher could sell heroin to once they returned. Appellant told Fletcher that he "could put [Fletcher] in contact with those people for the purpose of selling heroin." Appellant also told Wallace that he knew there was heroin in the car while they were driving "somewhere in Delaware [or] Maryland, prior to entering Virginia." Appellant told her he had sold cocaine or "powder" in the past, but that he is not a "large drug dealer."
>
> The total weight of the heroin recovered from the kitchen was 55.8 grams. An expert witness in the street-level distribution of narcotics testified that the value of the recovered heroin was between $5,000 and $6,000. According to the expert, the quantity was inconsistent with personal use based on the quantity of heroin, its value, baggies found in the kitchen, and the fact that appellant never made a statement that the heroin was for personal use.
>
> At trial, appellant offered a different account. He testified that he did not retrieve Fletcher from Philadelphia on July 18, 2013. He stated he was not aware of anyone bringing heroin into his residence in the relevant time frame, and he did not know whether or not Fletcher sold heroin. Appellant also testified he told Wallace he was not aware of the presence of anything illegal in the residence and that that was the extent of their conversation.

2

(*Henderson v. Commonwealth*, No. 1225-14-2, at 1–2, (Va. Cir. Ct. Apr. 22, 2015), ECF No. 1-5.)

## B. Procedural History

On November 4, 2013, a grand jury indicted Henderson for transporting or distributing one ounce or more of a controlled substance and unlawfully possessing with the intent to distribute a controlled substance after having been convicted of a like offense on a prior occasion. (Indictments 1–2, ECF No. 1-1.) Henderson pleaded not guilty to the drug charges and proceeded to a bench trial. The Circuit Court for the City of Richmond (the "Richmond Circuit Court") convicted Henderson on both counts. (Trial Tr. Jan. 30, 2014 127–28, ECF No. 1-2.) On June 20, 2014, the Richmond Circuit Court sentenced Henderson to five years imprisonment for each offense.[2] (Sent. Order 1, ECF No. 1-3.)

### 1. Henderson's Direct Appeals

Henderson appealed his convictions to the Court of Appeals of Virginia (the "Court of Appeals") arguing that the evidence at trial did not sufficiently support his convictions because the Commonwealth failed to prove that he possessed one ounce or more of heroin when he entered Virginia on July 18, 2013; or that he personally intended to distribute it. (Pet. Appeal 3, ECF No. 1-4.) On April 22, 2015, the Court of Appeals, finding the evidence sufficient for each count, affirmed Henderson's conviction. (*Henderson v. Commonwealth*, No. 1225-14-2 (Va.

---

[2] Records indicate that Henderson is no longer in custody. Nonetheless, his release does not moot his petition. In his § 2254 Petition, Henderson asks the Court to vacate his convictions and sentences. (§ 2254 Pet. 1). Additionally, Henderson asks this Court to address the portion of Henderson's sentence suspended by the Richmond Circuit Court. Because Henderson challenges his convictions and a portion of his sentence remains suspended, sufficient collateral consequences exist for this suit to continue. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained.").

Cir. Ct. Apr. 22, 2015), ECF No. 1-5.) The Supreme Court of Virginia denied in an unpublished order Henderson's appeal of the Court of Appeals' affirmance. (*Henderson v. Commonwealth*, No. 150792 (Va. Nov. 9, 2015), ECF No. 1-6.)

### 2. Henderson's State Habeas Petition

On November 1, 2016, Henderson, acting pro se, filed a petition for a writ of habeas corpus pursuant to Virginia Code § 8.01-654[3] (the "State Habeas Petition") in the Richmond Circuit Court (the "State Habeas Court"). In the State Habeas Petition, Henderson asserted that his trial counsel provided ineffective assistance because she did not move to suppress certain statements he made, and that appellate counsel failed to use DNA evidence to support the argument that Henderson did not possess the drugs. (State Habeas Pet. 8, ECF No. 1-7.) Henderson argued the "totality of evidence, without the consideration of the statements, which should have been suppressed, show that there is no sufficient evidence to convict." (State Habeas Pet. 10, ECF No. 1-7.)

The Commonwealth moved to dismiss the State Habeas Petition. The Commonwealth argued first that Henderson's ineffective assistance of trial counsel claim regarding his counsel's decision not to file a motion to suppress lacked merit. (Mot. Dismiss 5, ECF No. 1-8.) The Commonwealth noted that the "record, including the trial transcript, demonstrates [that] at 8:07 a.m. on July 19, 2013, 'before [they] began a discussion of anything,' Detective Wallace read Petitioner his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966)." (Mot. to Dismiss 5 (first brackets added; second brackets in original).) The Commonwealth asserted that the record

---

[3] Section 8.01-654 provides the procedural vehicle for bringing a petition for habeas corpus in a Virginia court: "The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority." VA. CODE § 8.01-654(A)(1).

4

further showed Henderson told the detective that he understood his rights and "admitted to police that he was aware there was heroin in his house, and that he knowingly transported it into the Commonwealth from out-of-state for the purpose of facilitating its sale." (Mot. Dismiss 5.)

The Commonwealth similarly argued that Henderson's ineffective assistance of appellate counsel claim lacked merit when Henderson faulted counsel "for not arguing the DNA evidence on appeal." (Mot. Dismiss 6.) The Commonwealth averred that the absence of Henderson's DNA from the heroin did not establish his innocence, particularly because the Commonwealth obtained Henderson's conviction based on a constructive possession theory. (Mot. Dismiss 7.) The Commonwealth also noted that, "at the appellate stage, the evidence is viewed in the light most favorable to the Commonwealth as the prevailing party below." (Mot. Dismiss 7.) Thus, according to the Commonwealth, appellate counsel did not act unreasonably given the standard of review. (Mot. Dismiss 6–7.)

The State Habeas Court denied Henderson's request for an evidentiary hearing and denied his State Habeas Petition. (*Henderson v. Herring*, No. CL16-4886, slip op. at 1; ECF No. 1-10.) Henderson appealed, and on November 16, 2017, the Supreme Court of Virginia refused Henderson's petition for appeal after finding no reversible error. (Denial 1, ECF No. 1-11.)

On February 14, 2018, Henderson filed the § 2254 Petition in this Court. Henderson argues that no rational trier of fact could have found that he committed the essential elements of each crime beyond a reasonable doubt, and that the state court rendered decisions based on an unreasonable application of federal law or contrary to federal law. Henderson asks the Court to

grant his petition, "set[] aside his convictions and sentences," or hold "an evidentiary hearing at which he can present evidence to further support his claims."[4] (§ 2254 Pet. 25.)

## II. Applicable Constraints Upon Habeas Review

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that she or he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that a state court adjudicated on the merits unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) further requires federal courts to limit their analysis of the state habeas court's decision "to the law as it was clearly established by the Supreme Court at the time of the [state habeas] court's decision." *Williams v. Stirling*, 914 F.3d 302, 311 (4th Cir. 2019), *as amended* (Feb. 5, 2019) (internal quotation marks, alterations, and citation omitted).

A decision is "contrary to" clearly established law "'if the state court applie[d] a rule that contradicts the governing law set forth in' Supreme Court cases, or 'confront[ed] a set of facts

---

[4] In the Motion to Dismiss, Ray agrees that Henderson exhausted the claims in his petition "for purposes of federal habeas corpus review." (Mot. Dismiss 6, ECF No. 7.) Ray does not challenge the timeliness of Henderson's claims. (*See* Mot. Dismiss; 28 U.S.C. § 2244(d).) In any event, the Court reviews the substance of each claim.

that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrive[d] at a result different from [that] precedent.'" *Id.* at 311–12 (*quoting Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A decision is an "unreasonable application" of clearly established Supreme Court law if the state court "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts of a particular prisoner's case." *Id.* at 312 (*quoting Taylor*, 529 U.S. at 407–08). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Taylor*, 529 U.S. at 410). In other words, "a litigant must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Lawlor v. Zook*, 909 F.3d 614, 626 (4th Cir. 2018) (internal quotation marks and citation omitted).

In assessing a state prisoner's habeas claims, the court must look to "the last reasoned decision of a state court addressing the claim." *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017) (internal quotation marks omitted and citation omitted).

### III. Analysis

In the § 2254 Petition, Henderson presents the two claims he raised on direct appeal challenging the sufficiency of the evidence. He also brings the two claims he raised in his State Habeas Petition regarding trial and appellate counsel's alleged ineffective assistance. Henderson first contends that the Commonwealth failed to prove beyond a reasonable doubt that he transported one ounce or more of heroin into Virginia. (§ 2254 Pet. 11.) Second, Henderson asserts the Commonwealth failed to prove beyond a reasonable doubt that he possessed heroin with the intent to distribute. (§ 2254 Pet. 14.) Third, Henderson argues he suffered ineffective

7

assistance of counsel because his trial attorney did not move to suppress certain statements that he made to Detective Wallace, adding that the State Habeas Court's denial of this claim was contrary to, and an unreasonable application of, federal law. (§ 2254 Pet. 16–17, 22.) Fourth, Henderson claims appellate counsel rendered ineffective assistance when counsel did not use DNA evidence to support his argument that the Commonwealth lacked evidence to show he possessed heroin with the intent to distribute it, also adding that the State Habeas Court's denial of this claim was contrary to, and an unreasonable application of, federal law. (§ 2254 Pet. 22.)

The Court concludes that, on this record, a rational trier of fact could find that Henderson committed each Virginia drug offense. The Court further finds that the State Habeas Court's denial of Henderson's claims was not contrary to, nor an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d). Because the record before the Court demonstrates that sufficient evidence supports Henderson's convictions and that trial and appellate counsel did not provide ineffective assistance, the Court will grant Ray's Motion to Dismiss and dismiss the Petition.

### A. **Sufficiency of the Evidence**

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. The *Jackson* standard "must be applied with explicit reference to the substantive elements

of the criminal offense as defined by state law." *Wilson v. Greene*, 155 F.3d 396, 406 (4th Cir. 1998) (quoting *Jackson*, 443 U.S. at 324 n.16).

Under Virginia law, to sustain a conviction for possession of a controlled drug, "it is generally necessary to show that the accused was aware of the presence and character of the particular controlled substance and that he consciously and intentionally possessed it." *Womack v. Commonwealth*, 255 S.E.2d 351, 352 (Va. 1979). As the Virginia Supreme Court has held, possession may be proved by "evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found." *Ritter v. Commonwealth*, 173 S.E.2d 799, 806 (Va. 1970).

In this case, the Commonwealth sought a conviction for transporting heroin[5] and argued that Henderson constructively possessed the drug. Constructive possession is generally a factual issue that must be established by evidence of the acts, declarations, and conduct of the accused. *Ritter*, 173 S.E.2d at 807. As the Virginia Supreme Court has explained, "[p]ossession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." *Smallwood v. Commonwealth*, 688 S.E.2d 154, 157 (Va. 2009) (internal quotation marks and citation omitted).

Virginia law further directs courts to consider the totality of the circumstances that the evidence discloses to resolve possession issues. *Birdsong v. Commonwealth*, 560 S.E.2d 468,

---

[5] In a prosecution under Virginia Code § 18.2–248 or Virginia Code § 18.2–248.01, the Commonwealth must prove that a defendant either possessed or transported a controlled substance in Virginia with the "intent to ... distribute." *Seke v. Commonwealth*, 482 S.E.2d 88, 89–90 (Va. Ct. App. 1997). To prove Henderson guilty of transporting heroin with the intent to distribute, Virginia law required the Commonwealth to prove that he transported one ounce or more of heroin "into the Commonwealth by any means with intent to sell or distribute [it]." VA. CODE § 18.2–248.01.

9

470–71 (Va. Ct. App. 2002). To establish constructive possession, the prosecution may show that the accused exercised dominion or control over the illegal substance. *Gillis v. Commonwealth*, 208 S.E.2d 768, 771 (Va. 1974). Establishing ownership or occupancy of the location in which the drugs are found is also probative of possession. *Glasco v. Commonwealth*, 497 S.E.2d 150, 155 (Va. Ct. App. 1998), *aff'd*, 513 S.E.2d 137 (Va. 1999). "Although mere proximity to drugs is insufficient to establish possession, it is a circumstance which may be probative in determining whether an accused possessed such drugs." *Id.* (citing *Brown v. Commonwealth*, 421 S.E.2d 877, 882 (Va. Ct. App. 1992) (en banc)).

Finally, to support the convictions in this case, Virginia law required the Commonwealth to prove the petitioner's intent to distribute the drugs seized. "Intent necessarily must be proved by circumstances." *Hunter v. Commonwealth*, 193 S.E.2d 779, 780 (Va. 1973) (noting several circumstances that the trial court could consider for intent, including drug quantity and packaging); *see also Patterson v. Commonwealth*, 213 S.E.2d 752, 753 (Va. 1975) ("Because direct proof is often impossible . . . intent may be shown by circumstantial evidence.). "Existence of the intent, however, cannot be based upon surmise or speculation." *Patterson*, 213 S.E.2d at 753 (citing *Taylor v. Commonwealth*, 150 S.E. 2d 135, 141 (Va. 1966)).

### 1. The State Court Did Not Unreasonably Determine That the Record Evidence Sufficiently Supports Henderson's Conviction For Transporting Heroin

Here, the state court did not unreasonably determine that the sufficiency of the evidence supported a finding of guilt beyond a reasonable doubt regarding the drug transportation charge. (*Henderson v. Commonwealth*, No. 1225-14-2 (Va. Cir. Ct. Apr. 22, 2015), ECF No. 1-5).) The state court of appeals summarized the trial court's findings, which this Court recited above. In sum, the state appellate court found that the evidence showed Henderson drove to Pennsylvania

to pick up Mickel Fletcher. On the drive back to Virginia, Henderson spoke with Fletcher about selling heroin. Henderson also learned about heroin located in the vehicle, and therefore he knew as he reentered Virginia that he was transporting heroin in his vehicle. (*Id.*) Henderson watched Fletcher bring the heroin into Henderson's house and place it in the kitchen. (*Id.*) The officers subsequently recovered the heroin from Henderson's kitchen when executing a search warrant. (Jan. 30, 2014 Trial Tr. 11–12, 16–17, ECF No. 1-2.) This evidence, established at trial and affirmed on appeal, satisfied the elements of Virginia's drug transportation offense.

Henderson argues, however, that the Commonwealth rested its drug transportation case solely on circumstantial evidence and that he did not know the specific "quantity or the number of bags" of heroin. (§ 2254 Pet. at 13.) But that is of no moment; trial courts and juries are permitted to draw reasonable inferences from circumstantial evidence. *See Inge v. Procunier*, 758 F.2d 1010, 1013 (4th Cir. 1985) ("[A]lthough the evidence against petitioner was circumstantial, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). And Virginia law makes clear that circumstantial evidence may support the Commonwealth's constructive possession theory of prosecution. *See, e.g.*, *Smallwood*, 688 S.E.2d at 157 (a "statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt"). Moreover, officers collected physical evidence from Henderson's house and the Commonwealth presented trial testimony from Detective Wallace explaining that Henderson told her about the drive back from Pennsylvania and the heroin, which directly linked Henderson to the physical evidence seized. (Jan. 30, 2014 Trial Tr. 10–27, ECF No. 1-2). Because a rational trier of fact could have found Henderson's actions

satisfied the drug transportation elements on this evidence, this Court must afford the state court decision deference and dismiss this claim.

### 2. The State Court Did Not Unreasonably Determine That The Record Evidence Sufficiently Supports Henderson's Conviction For Possession With Intent To Distribute Heroin

Similarly, the state court did not unreasonably determine that the sufficiency of the evidence supported a finding of guilt beyond a reasonable doubt regarding the possession with intent to distribute charge. (*Henderson v. Commonwealth*, No. 1225-14-2 (Va. Cir. Ct. Apr. 22, 2015), ECF No. 1-5.) The state court of appeals summarized the trial court's findings, which as noted earlier, this Court recited above. In sum, the state appellate court found that Henderson "concede[d] in his petition that it is undisputed that [he] discussed helping Fletcher sell whatever quantity of heroin he had with him in the car on their trip back to Virginia from Pennsylvania." (*Id.*) Henderson also told Fletcher that he knew people who would buy heroin. (Jan. 30, 2014 Trial Tr. 18–19, ECF No. 1-2). Furthermore, Henderson transported the heroin and stored it in his kitchen, the quantity of heroin indicated that it was intended for distribution, and Henderson never stated the heroin was for personal use. (*Henderson v. Commonwealth*, No. 1225-14-2 (Va. Cir. Ct. Apr. 22, 2015, (ECF No. 1-5.)

Henderson argues, however, that his knowledge that Fletcher "had brought heroin into the car does not constitute possession and does not constitute intent to distribute." (§ 2254 Pet. 15.) Henderson further contends that DNA evidence did not link him to the drugs, and that no evidence showed that he "attempted to exercise dominion and control over the drugs at all times." (§ 2254 Pet. 16.) But "[f]ederal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the [trial court's] guilt determination or to replace the state's system of direct appellate review." *Wilson*, 155 F.3d at 405–06 (citation omitted).

And Henderson overlooks other evidence—some of which is necessarily circumstantial—that shows his intent to distribute. This evidence includes his statements to Detective Wallace, the drug quantity, the location of the drugs, and the fact that he transported the drugs to Virginia to facilitate their sale. (*Henderson v. Commonwealth*, No. 1225-14-2 (Va. Cir. Ct. Apr. 22, 2015).) The mere absence of Henderson's DNA from the seized drugs does not outweigh the evidence linking Henderson to the heroin. As a result, Henderson does not meet the rigorous standard required of sufficiency of the evidence claims brought on collateral review. *Wilson*, 155 F.3d at 405–06. Because a rational trier of fact could have found the elements of possession with intent to distribute on this evidence, this Court must afford the state court decision deference and dismiss this claim.

### B. Ineffective Assistance of Counsel

"A prisoner petitioning for habeas relief based on ineffective assistance of counsel must meet two components: a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Stirling*, 914 F.3d at 312 (internal quotation marks, alterations, and citation omitted). "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Id.* at 312–13 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). In doing so, the petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To prove prejudice, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694. A petitioner does not suffer prejudice if his or her counsel failed to make an objection considered meritless under current governing law. *Rodriguez v. Bush*, 842 F.3d 343, 346 (4th Cir. 2016). In analyzing ineffective assistance of counsel claims, it is not necessary to "determine whether counsel's performance was deficient before examining the prejudice" issue. *Strickland*, 466 U.S. at 697.

Similarly, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he or she would have prevailed on his or her appeal. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (citing *Strickland*, 466 U.S. at 687–91, 694). Appellate counsel need not assert all nonfrivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. *See, e.g., id.*

### 1. The State Habeas Court Did Not Unreasonably Apply Federal Law When Denying Henderson's Ineffective Assistance of Trial Counsel Claim

Henderson first contends that, without the statements he made to Detective Wallace, the Commonwealth "could only show that heroin was found in the kitchen of Mr. Henderson's house, where several other adults were also staying." (§ 2254 Pet. 17.) Henderson asserts that "a reasonably competent defense attorney would have realized that suppression of Mr. Henderson's statements was crucial to his defense." (§ 2254 Pet. 18.) Because his trial counsel did not move to suppress his statements, Henderson argues this deficient performance prejudiced him. (§ 2254 Pet. 16–17.)

Henderson presented this ineffective assistance of counsel claim to the State Habeas Court. That court denied the claim in a summary, unpublished order. (*Henderson v. Herring*, No. CL16-4886, slip op. at 1.)

> When, as here, there is no reasoned state-court decision on the merits, the federal court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. If such disagreement is possible, then the petitioner's claim must be denied.

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (internal quotation marks, alterations, and citations omitted).

Because the record before the Court supports the State Habeas Court's determination, this Court will dismiss Henderson's ineffective assistance of trial counsel claim. First, the trial transcript shows that on July 19, 2013, at 8:07 a.m., Detective Wallace issued *Miranda* warnings to Henderson before he made any statements. (Jan. 30, 2014 Trial Tr. 16, ECF No. 1-2). As a result, moving the court to suppress Henderson's statements would likely have been fruitless. Trial counsel does not provide ineffective assistance when deciding not to make an objection considered meritless under current governing law. *Rodriguez*, 842 F.3d at 346. The Court finds nothing unreasonable in trial counsel's actions here.[6]

Second, in raising this claim, Henderson contradicts his trial testimony and the sworn statements that he made in his State Habeas Petition, in which he asserted that he did not make "any statements" to Detective Wallace. (State Habeas Pet. 10; Jan. 30, 2014 Trial Tr. 93–94.) But in this § 2254 Petition, Henderson argues that he "was not advised of his rights" before making the incriminating statements, which created a "clear basis on which to suppress the

---

[6] Moreover, "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrision*, 477 U.S. 365, 384 (1986).

15

statements." (§ 2254 Pet. 10, 18.) Because Henderson contradicts himself, not only does he fail to show that his trial counsel's representation fell below an objective standard of reasonableness, his argument also lacks credibility.

Third, Henderson asserts in his § 2254 Petition that "there was no showing that any waiver of rights was knowing, intelligent, and voluntary." (§ 2254 Pet. 21.) Henderson, however, did not give the state court the opportunity to adjudicate this issue, particularly after denying at trial that he made any statements to Detective Wallace. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (stating that section 2254(d)(1) directs federal courts to focus "on what a state court knew and did"). Given Henderson's conflicting arguments regarding whether he made statements at all, as indicated in his trial testimony and his State Habeas Petition, fairminded jurists could find on this record that trial counsel did not render ineffective assistance. As a result, the State Habeas Court's decision was not contrary to nor an unreasonable application of federal law and the Court will dismiss this claim.

### 2. The State Habeas Court Did Not Unreasonably Apply Federal Law When Denying Henderson's Ineffective Assistance of Appellate Counsel Claim

In his fourth claim, Henderson alleges that appellate counsel rendered ineffective assistance because counsel failed to mention the DNA evidence in this case, which did not link Henderson to the heroin seized from his kitchen. (§ 2254 Pet. 23.) Because "[a]ppellate counsel's argument centered on the Commonwealth's failure to prove that Mr. Henderson intended to distribute the heroin found in the kitchen," (§ 2254 Pet. 23), Henderson argues there is a "reasonable probability" that he would have prevailed on appeal if counsel had referenced the DNA results, (§ 2254 Pet. 24).

Henderson presented this ineffective assistance of counsel claim to the State Habeas Court. As noted, that court denied the claim in a summary, unpublished order. (*Henderson v. Herring*, No. CL16-4886, slip op. at 1.) Because the record before the Court supports the State Habeas Court's determination, this Court will dismiss Henderson's ineffective assistance of appellate counsel claim.

As explained above, the Commonwealth at trial pursued a theory of constructive possession. The Commonwealth, therefore, did not have to prove that Henderson physically handled the heroin or the bags containing the drugs. Assuming, without deciding, that Henderson can establish that his appellate counsel's failure to cite the lack of DNA evidence on appeal was objectively unreasonable, his claim still fails because he has not demonstrated that he would have likely prevailed on appeal. Henderson again overlooks the evidence that the Commonwealth presented during trial linking him to the heroin, which included officers recovering the heroin from inside his house, Henderson admitting to Detective Wallace that he transported the heroin in his car, and Henderson omitting any claim that he intended to personally use the heroin. (*Henderson v. Commonwealth*, No. 1225-14-2 (Va. Cir. Ct. Apr. 22, 2015).) And, on appeal, the court must view the evidence in the light most favorable to the Commonwealth as the prevailing party. Thus, fairminded jurists could find on this record that Henderson cannot demonstrate that he would have prevailed on appeal if his counsel had raised the lack of DNA to counter the Commonwealth's constructive possession theory. Henderson, therefore, does not show prejudice on this record. As a result, the State Habeas Court's decision was not contrary to, nor an unreasonable application of, federal law. The Court will dismiss his ineffective assistance of appellate counsel claim.

### IV. Conclusion

For the foregoing reasons, the Court will grant Ray's Motion to Dismiss and dismiss Henderson's Petition.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States District Judge

Date: March 25, 2019
Richmond, Virginia